Resume our call of the day, and the fourth case is State Auto Property & Casualty Insurance Company v. Brumit. Mr. Chemers. Good morning, Your Honors. May it please the Court, Counsel Robert Chemers for the Plaintiff Appellant, State Auto. Your Honors, this is an appeal and cross-motions for summary judgment from the Southern District of Illinois. Your Keep this in mind. A truck backed out of a parking place and struck a pedestrian, but the District Court held that wasn't an accident, didn't have to be reported, and the insurance company, which learned of that accident 21 months later when the insured was sued, was not barred from coverage because the Court found that it was a justified delay in notice. No Illinois court has ever construed a notice provision in an auto policy, as did the District Court, and neither defendant points to any such case. Notice is always required. The case law looks to not the notice clause, but whether there is an excuse, a reasonable excuse, for not giving notice. In this case, the notice clause is clear. In the event of an accident, you must give us or our authorized representative prompt notice of the accident. Clear. No exception, no condition, no qualification. But that said, the District Court changed it. The District Court made it, you have to give us notice of an accident involving bodily injury or property damage. But later, in the 26-page memorandum opinion, the District Court made it notice of an accident involving serious bodily injury. There are five factors. Five factors were recognized by the Illinois Supreme Court twice, in Country Mutual v. Lavorsi in 2006 and then in 2010 in West American Insurance v. Yorkville National Bank, which is a case I argued in the Supreme Court. That said, the five factors are policy language, sophistication of the insured, awareness of an accident, diligence, and prejudice. We can eliminate prejudice, the fifth factor right now, because the Illinois Supreme Court in Lavorsi held prejudice is but a factor, it's not a determinative factor. Even an insurer that can't prove prejudice can still have no duty to defend an insured who breached the notice condition. Language of the policy. In the event of an accident, you must give us or our representative notice. The District Court held that state auto's interpretation of that language, which is unmistakably clear, was quote unquote simply untenable. That if we required every accident to be reported, the phone would ring off the hook. And she described that, District Judge Rosenstengel, as a bad business model. Interesting, a 26-page memorandum opinion. Greg Clark, a 30-year veteran claim handler for state auto, testified at his deposition, and not once in 26 pages does the district judge refer to testimony of the state auto claim handler. Not once. He testified unassailed, unequivocally, if there is an accident, you must report it. Why must you report it? You have a situation like you have here. You have latent injuries. A woman gets knocked down. We learned from her affidavit in response to the motion for summary judgment that four days after the accident, she went to see an orthopedic surgeon, the same guy who did the hip replacement on her. She got knocked down by a truck. The same affidavit says, earlier I had been diagnosed with degenerative back disease in the lumbar spine. Had constant back pain. She eventually had spinal surgery. The affidavit said a few days after the accident, the back pain worsened. Well, but Carl Brummett, who owned his own business, had no training in medicine, decided she wasn't hurt. The EMT said, she said she wasn't hurt, but my job is to assess, not diagnose. And there are latent injuries that manifest themselves later. Greg Clark from State Auto testified. Very often, people say they're not hurt at the scene. The injury manifests itself in a few days, a few weeks, a few months, and it's what you don't know that's the problem. Now, the language of the policy is clear, but the district court rewrote it. The next factor is the sophistication of the insurer. This is a remarkable conclusion by this district judge, with all due respect. Mr. Brummett is a high school graduate, several years of community college, operates his own contracting business, buys insurance for his house, his life, his vehicle, his business, workers' comp. He has employees. They count on him for their income and his business smarts. Do you know anything about the, just for example, the insurance for the business. Were those two employees insured, or do you know? That I don't know, your honor. They'd be covered by workers' comp. Well, okay, that's, that would be my other question, but I don't know, and under workers' comp, do you have to list people who, you can't list all your employees, I presume? Workers' comp premiums typically based on payroll, and payroll based on the number of employees, obviously. Well, that sort of means something to me, at least, that this is, when you talk about the sophistication of getting the fact that he's, not just his wife that has homeowners, which we're not dealing with here, but the fact that this business that he's been running, I think at the time it was four years, is that correct? And having two and updates, I mean, that's what policies, insurance policies are, so somebody had to deal with that. That's correct, and he did. He testified he did. He testified, actually, he was smart enough to buy auto insurance because he had a truck that he used in his business. He owned and operated the business for a number of years, as your honor said, but the district court held as a matter of law, a matter of law, he was unsophisticated, that he was a blue-collar worker with limited education. In fact, the district court said he's on the low end of sophistication. Well, and she wrote, there was no evidence he studied insurance. I'm a lawyer. I've stood in front of this court probably 80 times in 41 years. I didn't take insurance law in law school. I dare say that most of the lawyers in this room didn't take insurance law in law school. This fellow who's a contractor, he didn't take insurance, but that's a great big so what. I don't think this court is going to tell the insurers in this state. We have three of the largest insurers in the United States, state, farm, all state, and country companies, that a high school educated driver with some college who runs a business is unsophisticated as a matter of law to recognize that when he backs up, hits a pedestrian, knocks her to the ground, calls the police, calls an ambulance, that he wasn't in an accident, that he doesn't have to give notice to an insurance company. That was the ruling as a unsophisticated. We've got eight and a half million licensed drivers in this state. I would say Carl Brumman is toward the top of that list because not everybody is law school trained or is a doctor or an architect or an engineer or a judge. They're ordinary people with ordinary jobs and a lot of teenagers, but they all know if you knock somebody down with a car or a truck, you are in an accident. Plain and simple. And if the policy says you have to give notice of an awareness of an occurrence is the third factor. Well, he was aware he was in an accident. First, he wasn't. He drove away. Before he got out of the parking lot, another motorist said, hey, you hit somebody. He came back, called the ambulance, called the police. This happened, the chief of police of this town, Columbia, Illinois, was in the mini mart at the time. And the EMT tended to Dolores. He gave a statement to the police, but the district court held. There was no reason for Carl Brumman, because he's unsophisticated as a matter of law, to think he was in an accident. That is a remarkable conclusion. And why? Because the district court said it was low impact, low speed, and the only visible injuries were scrapes. The district court recognized injuries and that she was knocked down, but she said she was okay, refused to be taken by ambulance to the hospital, and he wasn't ticket. At the time with Dolores, I think her name is, was she 68? Was she old? Well, I hate to think that's old. Well, I'm 75, so I guess I can say that. She was in advanced middle age, let's call it. I wouldn't call her elderly. I thought I read that she was 68. In her mid to late 60s, yes. She got out of her car to go into the mini mart, but before she could get in there, she got knocked down by a truck. Well, so you said something about it was hip. I thought it was knee replacement. Well, she scraped her knee and her elbow. So what was the replacement that she had previously? Oh, she had a replaced knee. Yeah, I thought she said knee. So I thought you may have said hip. Oh, if I did, Your Honor, I apologize. Well, I mean, I am familiar with people who've had replacements, and that's the first thing to think about when they fall down. Well, this fellow hit the wrong person. She had degenerative disc disease in the lumbar spine. She had a replaced knee, and that was her injury. She was an amalgam of injury and pain that got knocked down by a moving truck. But the district court said it's not a reportable accident. The fourth factor, Your Honor, is diligence to determine coverage. On this point, the district court found in favor of Carl Brummett. Remarkably so, because Carl did nothing. Nothing. He didn't call anyone. He didn't check with anyone. He didn't even read his policy. But that didn't matter because he was unsophisticated as a matter of law in the world of insurance and commerce. Now, Carl testified in his deposition, the impression I had, Carl Brummett said, she wasn't hurt. Later in his deposition, he said she wasn't seriously hurt. But he recognized he was in an accident. No reasonable person would say that unintentionally striking a pedestrian with a truck is not an accident. And when you have an obligation under a contract to give notice of an accident, whether or not it may lead to a claim, whether or not that serious injury, whether or not it's any injury, the obligation under the contract is to give notice. No reasonable person would disagree that an accident occurred on September 6, 2013. No reasonable person would agree that Carl Brummett was reasonable as a matter of law. Bear in mind, this is not like the cases involving CGL policies, where the language is different in the notice provision, and where the Illinois appellate court with respect to auto policies has held, where there's a collision, there's almost a certainty there will be a claim. The cases which have excused notice have done so where the insured had no idea that there was an accident, because the insured did not participate in the accident. That would be the commercial union versus heirs case from this court in 2001. It's the Barrington case from the Illinois Supreme Court that the defendants just the accident. You have no reason to give notice. This was an auto accident. Carl Brummett was the driver. He owned the truck. He knocked her down. He participated. If this court is going to tell the motoring public and the insurers of the state of Illinois that if you're in an accident, make it a wait-and-tell-later approach. Take excise from every auto policy in the state of Illinois, the notice of accident condition, and just leave notice of suit. Because remarkably, Carl Brummett was sued. And the day he received the summons, he put his insurance company on notice. So he knew what to do with the suit paper. He didn't know what to do with what led to the suit. That is, put the insurance company on notice. This case is the epitome of why notice needs to be given because of latent injuries. What can manifest itself in a few days? And Dolores Menard made that clear by her own affidavit of the medical care she sought within four days of this accident and the condition she was in. State Auto, through Greg Clark, testified, again, uncontroverted, that had we known of this accident, we would have opened a file. We would have contacted the witness. We would have contacted Mrs. Menard. We would have inquired about the injury. We'd inquire about the accident. We would have investigated. We would have evaluated. We would have gotten medical records. We would have established a rapport with the claimant. Instead, they found out about it 22 months later when it was in suit. That's the reason why, that at his deposition, Mr. Clark was probably asked five different times, five different ways, creative defense counsel, do you have an opinion whether this was reportable? And he kept saying, yes, it was an accident. He had to report it. This case, we would suggest to the court, for each of the factors where the district court found in favor of the insurer, that it was erroneous and it warrants reversal. We ask this court to reverse for the reasons stated. Any questions from the panel? If I have any time left, I'll use it for rebuttal. Thank you. Thank you, Mr. Chambers. We'll now hear from Mr. Busser. May it please the court, my name is Steven Busser. I'm representing Carl Brummett, Brummett Services, Inc. in this case. The issue before you is whether the 21-month delay noticed by Carl Brummett to State Auto involving the accident of September 6, 2013 was reasonable. When applying the five factors adopted by the Illinois Supreme Court in the Yorkville case, we suggested to the court that it was reasonable and that the decision of Judge Rosenstangel should be affirmed. While I intend to address all five factors of Yorkville, I would like to focus in this argument primarily on factors pertaining to the specific language and the policy language pertaining to notice, the sophistication of Carl Brummett, and also with regard to the issue of prejudice. As to the specific language in the policy, what counsel failed to address was that there's a linkage between paragraph 2 and section 4 of the policy. It doesn't say merely in the event an accident gives notice. It states specifically we have no duty to provide coverage under this policy unless you give prompt notice of an accident. The notice requirement is linked, there's a specific nexus in terms of what kind of coverage is available that requires notice. In order to determine that, you have to do more than isolate this one sentence in the policy. You have to look at section 2 that refers to coverage. Under coverage, it says we will pay damages that an insured has to pay because of bodily injury resulting from an accident. There's a nexus there between the two as opposed to this vacuum that he's suggesting that under any and all circumstances, you have to give notice. This policy also contains section 5 pertaining to definitions. Definitions in this policy indicate that an accident can include conditions resulting in bodily injury. The law in Illinois is that you have to look at the policy as a whole and not these isolated snippets as counsel is suggesting. And that's why in this court, looked at the policy not only with regard to reporting all accidents, but what is the coverage there? It's bodily injury and property damage. And that necessarily involves what was the impression that this insured had at the time, whether or not there was a bodily injury, in his mind, that a reasonably prudent person would understand needs to be reported. Well, first of all, obviously he didn't see it. Someone told me he finds her on the ground. The facts in this case, counsel used numerous times the word struck, knocking down, as if this was a major accident. The reason that Carl Brummett did not appreciate or understand at the time that there was a bodily injury or because of the facts of the accident, she wasn't knocked down. In her deposition, she said that she was tapped and fell. The only injury she did receive was a scrape on the arm. They put a bandage on. They checked her knee and gave her an ice pack, and that was it. They asked her specifically, do you want to go to the hospital? No. Do you want to go by ambulance? No. She specifically told Carl Brummett, I'm okay. She never told him once, I'm never intending to file a claim against you at all. The police officer who investigated the case himself testified that he determined it was a non-capacitating injury in his report. All of the facts indicate that Carl didn't even know he tapped this woman. This is unlike what counsel is suggesting, that somehow he suddenly knocked this woman down with a big truck. It was a very, very minor incident, and at that time, he did not have reason to know. He was backing up out of a parking spot. Is that what happened? Yes, sir. Okay, so whatever he tapped or bumped or hurt her elbow, maybe her knee, I don't know. That was the extent of the injuries at the site, and she clearly refused any further treatment, specifically told him, I'm all right. There was no, the police officer, as I said, himself, he did not consider this to be a serious injury, or he would have reported that in his police report. So I don't think that the counsel's argument that the policy in question requires every accident to be reported. The Supreme Court put limits on that in the Barrington case, and it said an insured is not required to report every injury it's aware of. It's only required to report those injuries which a reasonable person would understand would likely lead to a claim, and in this instance, with all the facts presented at that time, he did not consider it necessary to report a claim. Why did he call an ambulance? Sorry, sir? Why did he call an ambulance? He thought at the time it was, and when she said she wasn't. What made him think at the time it was? He didn't even know. He didn't even know we struck her. The first thought in his mind is perhaps she did. She refused it. She decided that she didn't need an ambulance, and none was ever called, and she refused to go. So he ended up giving notice when he had a reason to know that there was a claim filed against him, and that was 21 months later when she filed the lawsuit. It is correct that once the lawsuit was filed, he understood at that time, I now have notice of a claim. Within one day, he gave it to his agent, and within two days, state auto had it in its, in order to defend the case. So the case law is not requiring to report any and all accidents. If state auto wanted that kind of a requirement of its insurers, it could have stopped in section two under the conditions and merely say in the event of an accident, prompt notice is required. It didn't do that. It said we're not going to provide coverage unless you give this notice. It linked coverage into the whole concept of notice, and that's what they're trying to avoid and say under any and all circumstances. It's simply not the law. With regard to the sophistication issue, the courts in Illinois focus primarily on whether there's experience of the insured with claims, not merely their education, not whether they own a business. There's no question Carl Brummett never had any experience with body injury claims, even if he procured different types of policies as he said he did. When he was 19 years old, he had an accident. His parents handled an auto claim. He had nothing to do with it. I'm sure he understood what insurance was, maybe when he's 19, and wrecked the truck. He didn't have to pay, or maybe somebody, I don't know what the insurance company did, but at some point he's aware at 19. Believe it or not, I have a son who's 19, and he would understand if I had paid for something that he did when he hit somebody, or wrecked the car, or the truck. So insurance is not a vacuum. Understood. The reason that the courts tend to find lawyers, doctors, insurance agents as sophisticated is because this is something they're very familiar with in body injury claims. They find corporations, banks, governmental entities sophisticated because they retain lawyers to represent them in these matters. Yeah, but you can't say a guy that, as they were pointing out, that has his own business. He worked what, eight years? Four years. No, not that. Sorry. I'm talking, not talking about that. Before then, as I understand it, he worked eight years for something, kind of a concrete company. He was a construction worker. And six years as a construction worker. Yes, sir. And so he did that. Then apparently he gained some more skills, and starts his own business, hires two people, and he does this for four years. The truck is insured, and he's got workers comp. His wife has homeowners, which means at least the family is aware of insurance. And he knows he's got an insurance agent because he called him or her immediately. So obviously, over the years, he's been renewing and checking to see how much he needs. He's got two employees. Maybe you know the answer. Were either of those employees covered as possible drivers of this truck or another vehicle? He had employees. You're correct, sir. I guess the point is the courts tend to focus on is whether the insured had any actual experience involving bodily injury claims, and he had none. Well, that's not bodily injury. We're talking about insurance. Understood. If he had employees, it's not just workers comp, and I'm just curious, maybe you don't know the answer, of whether or not in that auto truck policy, whatever, generally if you have employees that are driving a vehicle on behalf of the business, they're going to be insured, covered. I would agree. And I don't know whether those were or not. Maybe you don't know. I don't remember specifically. I just know the cases that address the issue of sophistication. They talk about the mere fact that somebody procures policies or pay premiums doesn't necessarily make them a sophisticated insurer. Well, a lot more sophisticated than somebody like your comp, or this guy that had a paintball company. They found him to be unsophisticated, and that was the reason why he did it. He sounded like it. He's a high school dropout. He took this business over, and it's paintball. Correct. I'm not familiar with paintball, but my neighbor did ask permission to use our woods to have a paintball contest, and they dressed up like they're going to war. On the way down the driveway, I even asked him, I said, you guys ready to go to Afghanistan? The guy says, I'm going in two weeks. And that shut me up in a hurry. But anyway, paintball, you get stung. And they had sense enough to wear goggles. And apparently in that case that you cited, the guy didn't have one, and that's stupid. That's a good point, your honor. In the Berglin case, he was a business owner as well. It was a paintball business. In the Long case, it was a dram shop owner. The mere fact that they're businessmen, the courts in those cases didn't say that they're necessarily sophisticated, because they were also not familiar with bodily injury claims and the insurance industry, and they said in his mind, his unsophisticated mind, he didn't appreciate. In fact, in the Berglin case, that girl was injured, treated by a doctor at the scene, sent by ambulance to a hospital. And they still said because of his unsophistication, there's an indication that he wasn't appreciating that claim would ever be brought against him. It was a long, long time before there had even happened. You know, the doctor on site washed her eye out and did all that. But I mean, that's unfortunate. But this guy was more sophisticated by a long shot than he was. I mean, he did graduate from high school and had two years in some kind of electrical training. It's more than just somebody off the street that claims to be ignorant on a lot of things. I guess the point being is that in the Berglin case, he obviously purchased insurance as well. The dram shop owner purchased insurance, but that didn't make them necessarily sophisticated. The courts focused on what is their appreciation or experience with claims. In order to give notice. Correct. And in those case, there were delayed notice and the courts found that it was excusable because of his lack of sophistication in those matters. I'd just like to, if you have any other questions. No, that's, I mean, they've asked, they've recited all the comparisons and everything else. I'm aware of them. I mean, it's almost condescending to say this guy's not sophisticated. The cases in which the courts say under the third has to do with awareness of an occurrence that may trigger occurrence. It's not just that there was an accident. There's no question there was an accident. He acknowledged that. The point was, this is the type of an accident that would likely leave him to believe that a claim would be filed against them. That's the question, not merely whether there was an accident. And all the factors in this case show that he did not likely believe that there would be one against them. That's in comparison to cases in the brief. Counsel, I think I'll have to ask you to cases involving stabbings, hit and run accidents, much, much more serious than this type of an accident where a lady was knocked down and refused to go by ambulance to the hospital, specifically indicated to him that I was not injured. The last point I would just like to make is that with regard to the prejudice issue, I think we'll have to rely on the briefs on that. Thank you, sir. Thank you. We'll hear now from Mr. Adams. May it please the court. My name is Tom Adams, and I represent Alan Menard in this case, one of the appellants. And until recently, I also represented Alan's wife, Dolores, who died on September 19 of this year from a cause not related to this litigation. What's before the court in this case is the interpretation of motor vehicle accident insurance policy issued by State Farm to the appellees, Carl Brummett and Brummett Services, his company, to determine if there was coverage for an accident that occurred on September 13, when Dolores was walking across a parking lot at a convenience store filling station in Columbia, Illinois, behind a vehicle that Carl Brummett was backing up with out of a parking spot when she was bumped into and caused to fall to the hard surface of the parking lot, causing what she thought at the time was superficial and insignificant injuries to one of her elbows and one of her knees. The terms of the policy that the court is being asked to construe is, first of all, what is a covered accident under the policy, and secondly, the application of the requirement of notice of accident, the failure of which could result in excusing coverage under the policy. Under Illinois law, the court's required to consider all of the language in the policy in interpreting these two specific provisions. And furthermore, under Illinois law, on the notice of injury requirement, if the language of that policy on that isn't clear and unambiguous, then the court should find that there is coverage. The state auto's interpretation of their policy, as you heard again today and as was mentioned many times in their briefing, is that if they're insured, it's required to report all accidents to the insurer. I recommend that the court the unplausibility of that definition. Assume for purposes of my argument that Carl Brummett had been hurt in this accident as well and was rendered unconscious for 21 months before he reported the accident. Would that be a violation of the notice provision? State auto would say, yes, absolutely. If accident, then notice. No excuses considered, no special circumstances that explain a delay allowed. Now, the courts in Illinois have developed or superimposed on an analysis of the notice of accident provision a responsibility element. And in these cases involving the notice requirement and honorable bill policies, the court has to consider all the facts and circumstances in the occurrence and determine whether the insured would reasonably expect that a claim could result from it. The Supreme Court, as you heard from both parties before me, has developed a five-factor analysis to be applied in determining whether notice in a particular case is proper. First they look at the specific language and the notice of accident provision and the policy. Then they consider the sophistication of the insured in matters of insurance and commerce. Then they determine what are the insured under the circumstances could reasonably expect a claim to diligence and determining whether his contract of insurance covered that claim. And lastly, they consider whether the insurer was prejudiced by late notice of the claim. The district court in this case found all five factors in favor of the insured based on the evidence presented in the record. I submit that this panel will reach the same conclusion if you apply Illinois law to the facts in this case. So we're asking the court to affirm the decision of the district court. I should also point out that there is no clear definition of either accident or prompt notice in the insurance policy. I appreciate your indulgence and consideration. Thank you. Any questions? I'll try to answer. MR. ADAMS I don't think so, Mr. Adams. Thank you very much. Mr. Chambers, you have a moment. One minute. MR. CHAMBERS One minute. Thank you, Your Honor. Mr. Buser talked about you have to have actual experience in claims in order to give notice to an insurer. When I leave the courthouse to walk back to my office, I hope among the 8.5 million licensed drivers in Illinois, none with actual claim experience are driving. When I have to cross Dearborn, Clark, LaSalle, and Wells to get to my office, it would be scary. Link coverage to the policy, the notice provision is clear. That's what you have to do to give notice. You look at the other parts of the policy to determine if you have coverage for a claim or suit which might come. MR. ADAMS Mr. Chambers, assuming that Brumman is more sophisticated than a defendant in Berglund, what would constitute a licensed driver who has to be insured in Illinois as unsophisticated? Assuming you have to take a reading test for your initial one, a vision test, and whatever the other requirements are. Could you give me an example of the unsophisticated? MR. BUSER I really can't. For the reason, Judge Flom, that I can't is the concept of sophistication has been used by the Illinois Supreme Court and the Illinois Reviewing Courts in connection with CGL policies, policies involving different types of claims. Auto policies, as far as insurance policies go, are the simplest policies. They're mandatory, and they're written in a way so people understand them more readily than a CGL such as that in Berglund. When the Supreme Court in Yorkville looked at these factors, it gave me an example of a reasonable excuse not to give notice to an insurance company. In that case, a West American insured a bank. The president of the bank asked his insurance agent on a Saturday morning when the insurance agent was in there making a deposit, we've been sued. It's a defamation case. Are we covered? The agent said, probably not. So they didn't give notice to West American for 27 months. Interesting. That same agent sat on the board of directors of the bank where they discussed the lawsuit. And the Illinois Supreme Court held there's an excuse for not giving notice because the agent said it may not be covered, but they actually gave notice to the insurance company through the agent who was on the bank's board and was aware of the lawsuit. So in an auto setting, anyone who's smart enough to buy the policy, which is mandatory, is sophisticated enough to know that if you knock somebody down, you are in an accident. Thank you. We'd ask the court to reverse. Thank you, Mr. Chemers, Mr. Buser, Mr. Adams. Our thanks to both of you, and the case will be taken under advisement.